SIXTH DIVISION
December 22, 2006

No. 1-05-3992

KEVIN ATKINSON                   )       Appeal from the
                                    )       Circuit Court
    Plaintiff-Appellant       )       of Cook County.
                                    )
    v.                        )       No. 04 L 004492
                                    )
RALPH AFFRONTI, EDWARD JUERGENSEN, )
FRANK O'LONE and FRANK A. MARCO,  )       Honorable
                                    )       Robert Lopez-Cepero,
    Defendants-Appellees.     )       Judge Presiding.

JUSTICE O'MALLEY delivered the opinion of the court:

Plaintiff, Kevin Atkinson, sued defendants Ralph Affronti, Edward Juergensen and Frank O'Lone for false arrest and Frank A. Marco for defamation and making statements that place him in a "false light before the public." The circuit court dismissed defendant Marco from this case pursuant to section 2-619(a)(9) of the Code of Civil Procedure (the Code) (735 ILCS 5/2-619(a)(9) (West 2004)), based on an attorney's absolute privilege to publish defamatory statements pursuant to section 586 of the Restatement (Second) of Torts (Restatement (Second) of Torts § (1977)). Plaintiff appeals the judgment assigning error to the circuit court for granting defendant Marco's motion to dismiss because: (1) the privilege does not apply to defamatory communication to another prior to the commencement of litigation; and (2) questions of fact exist as to whether defendant Marco had a good-faith belief that plaintiff's employer was liable under the doctrine of respondeat superior. For the reasons that

follow, we affirm the judgment of the circuit court.

BACKGROUND

The following facts are derived from the well-pleaded facts in plaintiff's complaint and the reasonable inferences drawn therefrom, which, for purposes of this appeal, must be accepted as true (In re Chicago Flood Litigation, 176 Ill. 2d 179, 184 (1997)), as well as the various evidentiary materials submitted by both parties in connection with defendant's motion to dismiss. See Lawson v. City of Chicago, 278 Ill. App. 3d 628, 634 (1996) (in ruling on a section 2-619 motion for dismissal, the court may properly consider "external submissions of the parties"); In re Petition for Submittal of the Question of Annexation to the Corporate Authorities of the City of Joliet, 282 Ill. App. 3d 684, 688 (1996) (court may consider when ruling on section 2-619 motion to dismiss "pleadings, depositions, affidavits [citation], and other evidence offered by the parties").

On July 18, 2003, plaintiff was employed as a site superintendent by the Dobbins Group (Dobbins), a general contractor, to oversee construction at a jobsite referred to as Fort Sheridan. On that morning, members of the Ceramic Tile, Terrazzo & Granite Cutters Union Local No. 67 (Local 67) began picketing the jobsite because Polco Flooring, a nonunion contractor, was subcontracted by Dobbins to perform the floor installation. Picketers, including defendant Affronti, were confronted by plaintiff, who came out of a Dobbins trailer and

2

complained that the demonstration was obstructing the workers. Affronti stated that plaintiff subsequently came out of the trailer and threw the picketers' food and drinks to the ground during lunch. According to defendants, plaintiff was simply ignored.

On July 22, 2003, Affronti and others again picketed the Fort Sheridan jobsite. Plaintiff allegedly insulted the picketers, who then called the Highland Park police and complained that plaintiff was harassing them. Officer Weng of the Highland Park police spoke to plaintiff and he agreed to stay away of the picketers. On July 25, 2003, Affronti and others commenced picketing the Fort Sheridan jobsite again and also displayed a large inflatable rat that belonged to Local 67 to publicize the nonunion labor employed on the project. Affronti swore in his affidavit that he observed plaintiff stab the inflatable rat with an object and leave the scene in his car. Affronti called Officer Weng and filed a police report.

Plaintiff contends that Juergensen and O'Lone also accused him of cutting the inflatable rat. As a result of these accusations, plaintiff was arrested on July 28, 2003. Plaintiff maintains that the allegations against him were false and that all charges against him were dropped when another came forward and admitted that he, and not plaintiff, damaged the balloon.

Defendant swore in his affidavit in support of his motion to dismiss that he had received a call from Frank O'Lone of Local

3

67, advising him that plaintiff, Dobbins' superintendent, damaged Local 67's property while they were engaged in a labor dispute at Fort Sheridan. O'Lone employed defendant's firm to represent Local 67 in this matter and requested that defendant take all necessary steps, including legal proceedings, to recover money for damage to its property. Defendant issued the following letter to Dobbins on behalf of Local 67:

"Dear Sir/Madam:

Please be advised that this office represents the Ceramic Tile Layers Union Local 67 who are engaged in a labor dispute with Polco Flooring at the Fort Sheridan jobsite. The purpose of this letter is to advise you of certain wrongful acts committed by your employee Kevin Atkinson. As your superintendent, he has destroyed and damaged property belonging to our Local.

Our labor dispute is not with you, but with Polco Flooring and why Mr. Atkinson has taken these actions is unfortunate. The purpose of the letter is to put you on notice and to advise you that we intend on holding the Dobbins Group responsible for the property damage.

Local 67 is engaged in a lawful and peaceful picket against Polco Flooring. We intend on holding your company responsible for any interference or damage caused by the Dobbins Group. Please call me if you have any questions or wish to discuss this matter."

4

Defendant further indicated in his affidavit that litigation was contemplated in good-faith, under serious consideration and authorized by Local 67.  Ultimately, no lawsuit was filed, because Local 67 was paid for the damage to the inflatable rat by a third party and no other confrontations occurred at the Fort Sheridan jobsite.

Defendant filed his motion to dismiss based on absolute immunity pursuant to section 586 of the Restatement (Second) of Torts.  The circuit court, in a written order, found that the privilege "expressly applies to letters made prior to a legal proceeding" and that defendant had a good-faith belief that plaintiff was acting within the scope of his employment when the alleged damage occurred.  The circuit court further held that plaintiff's failure to counter or contradict defendant's affidavits necessarily requires the court to accept defendant's facts as true for purposes of the motion and grant judgment in his favor.  Plaintiff now appeals.

ANALYSIS

I. APPLICATION OF THE PRIVILEGE

Plaintiff contends that defendant was not entitled to the privilege under section 586 of the Restatement (Second) of Torts because the communication is to a third party that occurred prior to litigation.  Plaintiff cites to Golden v. Mullen, 295 Ill. App. 3d 865 (1997), and Thompson v. Frank, 313 Ill. App. 3d 661 (2000), for the proposition that Illinois courts have not

extended this privilege to out-of-court statements to other persons. <u>Golden</u>, 295 Ill. App. 3d at 872 (declining to expand the privilege to cover communications made by an attorney to his client's spouse.) <u>Thompson</u>, 313 Ill. App. 3d at 664 (holding that "an absolute privilege does not bar a libel action based on an allegedly defamatory communication between one party's attorney and the spouse of the opposing party to pending litigation"). We disagree and find the authority upon which plaintiff relies to be inapposite.

The defense of absolute privilege in a defamation action involving statements made by an attorney is set forth in section 586 of the Restatement (Second) of Torts and provides as follows:

> "An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications <u>preliminary</u> to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding." (Emphasis added) Restatement (Second) of Torts, §586 (1977). See also <u>Golden v. Mulllen</u>, 295 Ill. App. 3d 865, 869-70 (1997).

The privilege extends to out-of-court communications between opposing counsel (<u>Dean v. Kirkland</u>, 301 Ill. App. 495 (1939)), to out-of-court communications between attorney and client related to pending litigation (<u>Weiler v. Stern</u>, 67 Ill. App. 3d 179 (1978)), to out-of-court communications between attorneys

6

representing different parties suing the same entities (<u>Libco Corp. v. Adams</u>, 100 Ill. App. 3d 314 (1981)), to statements made during quasi-judicial proceedings (<u>Richardson v. Dunbar</u>, 95 Ill. App. 3d 254 (1981)), to communications necessarily preliminary to a quasi-judicial proceeding (<u>Parrillo, Weiss & Moss v. Cashion</u>, 181 Ill. App. 3d 920 (1989)), and to out-of-court communications between an attorney and opposing parties in demand letters prior to litigation (<u>Simon v. Oltmann</u> 98-C-1759 (N.D. Ill. August 31, 2001)).

In <u>Golden</u>, this court recognized that the only requirement is that the communication pertain to proposed or pending litigations and that "[a]ll doubts should be resolved in favor of a finding of pertinency, which is a question of law for the court." <u>Golden</u>, 295 Ill. App. 3d at 870, citing <u>Skopp v. First Federal Savings of Wilmette</u>, 189 Ill. App. 3d 440, 447-48 (1989), and <u>Macie v. Clark Equipment Co.</u>, 8 Ill. App. 3d 613, 615 (1972). If, however, the defamatory statements have "no connection whatever with the litigation," then no privilege will attach. <u>Golden</u>, 295 Ill. App. 3d at 870; Restatement, (Second) of Torts §586, Comment c, at 248 (1977). The privilege is predicated on the tenet that although defendant's conduct is otherwise actionable, because he is acting in furtherance of some interest of social importance, the communication is protected and no liability will attach, even at the expense of uncompensated harm to the plaintiff's reputation. <u>Golden</u>, 295 Ill. App. 3d at 870,

1-05-3992

citing <u>Weber v. Cueto</u>, 209 Ill. App. 3d 936, 942 (1991); <u>Libco</u>, 100 Ill. App. 3d at 317. We are convinced that the same public policy considerations that protect an attorney's statements made to his or her client during the course of a legal proceeding necessarily protect prelitigation communications such as the letter defendant sent to plaintiff's employer.

An attorney must be at liberty to candidly and zealously represent his client in communications to potential opposing parties in litigation or other proceedings without the specter of civil liability for his statements clouding his efforts. Were we to accept plaintiff's argument that extending the privilege to communications to others prior to litigation goes beyond the scope of the privilege, we would obstruct more than just an attorney's ability to properly represent his client. Such a limitation on the privilege could frustrate an attorney's ability to settle or resolve cases favorably for his client without resorting to expensive litigation or other judicial processes.

Under plaintiff's rule, an attorney may be liable for defamation by demanding that several potentially culpable defendants settle a dispute out of court. Frequently, the best strategy for certain disputes is to avoid formal proceedings and resolve matters out of court. An attorney could be stymied by this rule from putting forth his best evidence supporting his client's position that might otherwise deter formal litigation and spare his client's time and resources, as well as those of

8

potential defendants. There is, in our view, an incalculable social and economic benefit to litigants, taxpayers, attorneys and the general public in settling cases that would otherwise add to the already clogged dockets and further strain our thinly spread judicial resources. We therefore hold that the absolute privilege which applies to defamatory statements made by an attorney during pending litigation applies to prelitigation defamatory statements made in written communications to a potential litigant.

## II. PERTINENCY REQUIREMENT

Plaintiff asserts that the privilege cannot be applied here because defendant must prove that he had a good-faith belief that Dobbins was responsible for plaintiff's acts. He argues that concluding, as defendant did, that Dobbins would be vicariously liable for plaintiff's acts based on self-serving statements from his client was insufficient. He also claims that had defendant conducted a reasonable investigation and waited three additional days prior to communicating with Dobbins, he would have been made aware that another party acknowledged responsibility. However, plaintiff offers no authority to support his assertion that an attorney must first investigate a client's claim for legal sufficiency prior to issuing a demand letter. We disagree with plaintiff and hold that defendant did not have to prove a good-faith belief that Dobbins was responsible for plaintiff's acts or conduct an investigation to verify his client's statements.

The privilege affords complete immunity, irrespective of the attorney's knowledge of the statement's falsity or the attorney's motives in publishing the defamatory matter. Restatement (Second) of Torts §586, Comment a, at 247 (1977); Weber v. Cueto, 209 Ill. App. 3d 936, 942 (1991). The only requirement is that the communication pertain to proposed or pending litigation. The pertinency requirement is not applied strictly, and the privilege will attach even where the defamatory communication is not confined to specific issues related to the litigation. Golden, 295 Ill. App. 3d at 870; Libco, 100 Ill. App. 3d at 317. In the instant case, defendant's letter was directed to Dobbins, plaintiff's employer, and described the conduct of plaintiff, its employee. The letter further indicated that defendant's client intended to hold Dobbins financially responsible for plaintiff's conduct. Here, notwithstanding the aforementioned requirement and its liberal application, the alleged defamatory statements relate only to the specific issues of the potential litigation, namely plaintiff's stabbing the inflatable rat which was interfering with progress at the Fort Sheridan site construction while performing his duties as superintendent for Dobbins. We find, as a matter of law, the content of defendant's letter to Dobbins meets the pertinency requirement.

Moreover, even if defendant was required to show a good-faith belief that Dobbins was vicariously liable for plaintiff's conduct based on his client's statements, the evidence in the

10

record here shows far more than a good-faith belief.  The doctrine of <u>respondeat</u> <u>superior</u> permits an employer to be held vicariously liable for the torts of his employee if they are committed within the scope of that employment.  <u>Pyne v. Witmer</u>, 129 Ill. 2d 351, 359 (1989), citing <u>Darner v. Colby</u>, 375 Ill. 558, 566-67 (1941), and <u>Gomien v. Wear-Ever Aluminum, Inc.</u>, 50 Ill. 2d 19, 21 (1971); see generally Restatement (Second) of Agency §219 (1958).  Although there is no precise definition for "scope of employment," our supreme court in <u>Pyne</u> identified the following broad criteria found in section 228 of the Restatement (Second) of Agency which provides, in pertinent part:

" '(1) Conduct of a servant is within the scope of employment if, but only if:

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master, * * *

* * *

(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.' "

<u>Pyne</u>, 129 Ill. 2d at 360, quoting Restatement (Second) of Agency §228 at 504 (1958).

11

Defendant's conclusion that Dobbins could be held liable for plaintiff's actions is clearly supported by the statements that were made to him by representatives of Local 67. In the uncontested affidavits attached to defendant's motion to dismiss, defendant states that he was contacted by Local 67 to represent them in recovering money for damage to its property caused by plaintiff. Defendant was told by his client that plaintiff was employed by Dobbins to supervise the construction at the Fort Sheridan site at approximately 9:30 a.m. when the incident occurred. It was further alleged that plaintiff stabbed the inflatable rat because it was interfering with the construction work, for which plaintiff was responsible, at the Fort Sheridan site. These unrebutted statements in the record support the conclusion that Dobbins would be vicariously liable for plaintiff's conduct. Plaintiff's act of stabbing the inflatable rat was actuated, at least in part, by a purpose to serve the master by clearing an obstruction, at the Fort Sheridan site, during regular business hours and thus imputes liability to Dobbins under the doctrine of respondeat superior.

If a party moving for dismissal or summary judgment supplies facts which, if not contradicted, would entitle the party to a judgment as a matter of law, the opposing party cannot rely on bare allegations alone to raise issues of material fact. Barber-Coleman Co. v. A&K Midwest Installation Co., 236 Ill. App. 3d 1065, 1070-71 (1992). Facts contained in an affidavit in support

12

1-05-3992

of a motion to dismiss which are not contradicted by counter-affidavit must be taken as true for purposes of the motion. Barber-Coleman Co., 236 Ill. App. 3d at 1071. We, like the circuit court in this case, find that defendant had a good-faith belief that Dobbins was responsible for plaintiff's conduct. We also hold that an attorney is not required to undertake an investigation or wait until statements made by their clients are proven true prior to communicating with potential litigants in order to be protected under the privilege.

### III. CONCLUSION

For the foregoing reasons, we hold that the absolute privilege in the section 586 of the Restatement (Second) of Torts applies to defamatory statements in written communications from an attorney to a potential litigant to the extent that the communication pertains to proposed litigation or other proceedings. Defendant's communication in this case pertained to proposed litigation and he was not required to undertake any investigation to determine the truthfulness or accuracy of his clients' statement before the absolute privilege could be applied to him. As a result, the circuit court properly applied the privilege to defendant's statement and dismissed all claims against him. Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

FITZGERALD-SMITH, PJ., and JOSEPH GORDON, J., concur.

13