**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 02, 2014*
Decided April 9, 2015

**Before**

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 14-2979

| | |
|---|---|
| ERIC C. ONYANGO, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of |
| | Illinois, Eastern Division. |
| *v.* | |
| | No. 13 C 6256 |
| NICK & HOWARD, LLC, et al., | |
| *Defendants-Appellees*. | Sharon Johnson Coleman, |
| | *Judge*. |

## O R D E R

Eric Onyango, who is black, sued a night club owner and two others, alleging violations of 42 U.S.C § 1981 and state law. The district court dismissed with prejudice the § 1981 claims and two of the claims for intentional infliction of emotional distress. The court then declined to exercise supplemental jurisdiction over the remaining

---

*This appeal is successive to case no. 13-3825 and is being decided under Operating Procedure 6(b) by the same panel. After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

state-law claims. Onyango appeals, and because Onyango states no plausible § 1981 or emotional-distress claims, we affirm the judgment.

Onyango complains about two sets of events at The Underground night club in Chicago. He names as defendants Nick & Howard (the company that owns the club), the club's lawyer (Douglas Wexler), and Wexler's own lawyer, Samuel Manella. According to his complaint, the first set of events began when Onyango and a friend were at the club in December 2012. Carlos Rosales, a frequent club patron, made racist remarks to Onyango and told him to "get out." Onyango left the club, and a few weeks later he complained to the club about Rosales and threatened litigation. When he returned to the club sometime later, bouncers enforced policies that discouraged him from entering: He saw that black customers waited in line longer than white customers, bouncers lied about wait times, and they "selectively enforce[ed] nonarticulable dress codes while making exceptions for rappers and drug dealers." Onyango labels this race discrimination.

The second set of events involves accusations of sexual misconduct. Onyango alleges that while he and a friend were waiting to enter The Underground in August 2013, the club patron Rosales approached him and, for racially hostile reasons, loudly and falsely called him a "sexual assailant." Rosales then spoke to the bouncer, who denied Onyango entry into the club. Onyango complained to Nick & Howard about this new incident and reprised his threat to sue. He later spoke about the incident with Wexler, the club's lawyer, who began to investigate. Wexler first contacted Rosales, who asserted that Onyango had once been asked to leave the club for groping a woman, and said a woman named Marcella Acosta would be able to confirm that Onyango was aggressive. Wexler contacted Acosta, told her that Onyango had sexually assaulted women, and asked her to lie and confirm that Onyango had inappropriately touched her and other women. Upon learning about this conversation, Onyango reported Wexler to the FBI and Illinois Attorney Registration and Disciplinary Commission to complain about Wexler's lies. Wexler hired Manella, who represented him in the ARDC proceedings.

In this suit, Onyango raises claims of race discrimination and retaliation under 42 U.S.C. § 1981. He contends that the club committed race discrimination (1) when Rosales told him to "get out" in December 2013, (2) when it denied him entry in August 2013 based on Rosales's racially motivated accusation of sexual misconduct and, more generally (3) by enforcing its club-admission policies. Onyago next asserts that, seven months after he complained in January 2013 about Rosales's racist remarks, the club and

Wexler retaliated against him by responding to the allegations of sexual misconduct. Finally, he accuses the defendants of intentional inflicting emotional distress, defamation, and other state-law violations.

The district court dismissed the case. First, it denied Onyango's motion to enjoin the defendants from defaming him, a ruling that this court upheld on interlocutory appeal. *Onyango v. Nick & Howard, et al.*, 559 F. App'x 571 (7th Cir. 2014). A few months later the district court granted the defendants' motions to dismiss. It first addressed the § 1981 discrimination claim. The court explained that Nick & Howard could not be liable for Rosales's racially motivated conduct and Onyango's allegations about the club-admission policies were too vague to state a race claim. Second, the judge dismissed his § 1981 retaliation claims because Onyango did not specifically allege that his complaint to the club about Rosales in January 2013 was the reason that, seven months later, Rosales called him a "sexual assailant" and the club investigated him for sexual misconduct; in addition, the investigation was not sufficiently adverse to deter complaints about discrimination. Next, the judge granted both Wexler and Manella's motions to dismiss the claims for intentional infliction of emotional distress based on litigation privilege. The judge declined to exercise supplemental jurisdiction over the remaining state-law claims. Onyango moved for reconsideration under Federal Rule of Civil Procedure 59(e), and the district court denied his motion.

On appeal Onyango first asserts that the district court erred by dismissing his § 1981 claims against Nick & Howard. We begin with his argument that, because Rosales wanted him removed from the club for racially hostile reasons, Nick & Howard is liable for race discrimination. To state a race-discrimination claim under § 1981 Onyango needs to allege that the club refused to contract with him because of his race. *See Black Agents & Brokers Agency, Inc. v. Near N. Ins. Brokerage, Inc.*, 409 F.3d 833, 837 (7th Cir. 2005); *Bagley v. Ameritech Corp.*, 220 F.3d 518, 521–22 (7th Cir. 2000). And because Onyango wants to base Nick & Howard's liability on Rosales's animus, he needs to allege a basis for holding the club liable for Rosales's conduct. To do that he must allege that Rosales was an agent of the club and that Nick & Howard knew about and endorsed his conduct by forcing him to leave or refusing him entry. *See Daniels v. Dillard's, Inc.*, 373 F.3d 885, 888 n.4 (8th Cir. 2004); *Berger v. Iron Workers Reinforced Rodmen Local 201*, 843 F.2d 1395, 1430 (D.C. Cir. 1988). But Onyango never specifically alleged that the club removed him because it knew that Rosales opposed Onyango's entry for racial reasons and adopted his animus.

Onyango replies that agency and knowledge are not needed to hold Nick & Howard liable for Rosales's conduct. He argues that in *Dunn v. Washington County Hospital*, 429 F.3d 689, 691 (7th Cir. 2005), we supposedly held a business is "directly" liable for a contractor's discriminatory conduct. But in that case a nurse at a hospital stated a claim for a hostile work environment because she alleged that the hospital knew of but did not stop ongoing sexual harassment by a doctor who worked at the hospital. *Id.* Here Onyango does not allege that Nick & Howard knew about the racial motivation for Rosales's accusation of sexual misconduct. *See Daniels*, 373 F.3d at 888 n.4; *Berger*, 843 F.2d at 1430. Accordingly this theory of race discrimination under § 1981 fails. (Onyango argues for the first time in his reply brief that Nick & Howard is liable on a negligence theory, but he has waived that argument because it comes too late. *See Feldman v. C.I.R.*, No. 12-3144, 2015 WL 759250, at *11 n.10 (7th Cir. Feb. 24, 2015).)

We also agree with the district court that Nick & Howard is not liable for race discrimination based on its own admission "policies" because Onyango's allegations about those policies are too conclusory to support an inference of discrimination. He asserts that he was discouraged from entering the club because black customers have waited longer in line than whites, bouncers have lied to some black customers about wait times, and the bouncers have unevenly enforced dress codes. He concludes that any difference in treatment must be the result of a club policy of racial exclusion. But a conclusion like Onyango's that is based on "facts that are 'merely consistent with' a defendant's liability" is legally insufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 557 (2006)).

We turn next to Onyango's § 1981 retaliation claims against Nick & Howard and Wexler. To state a claim for retaliation under § 1981 Onyango must allege that he engaged in protected activity, suffered a materially adverse action, and that there is a causal connection between the two. *See Smith v. Bray*, 681 F.3d 888, 896 (7th Cir. 2012). We have so far applied § 1981's retaliation provision only in the employment context. *See Carter v. Chi. State Univ.*, No. 13-3367, 2015 WL 544881, at *4 (7th Cir. Feb. 11, 2015). But even if we assume that the provision applies outside of that context, the claim fails because causation is missing. Onyango alleges that seven months after he complained to Nick & Howard about Rosales's conduct in December 2012, the club denied him entry and its lawyer investigated Rosales's charge of sexual assault. But Onyango does not plausibly allege that the complaint and the investigation were causally connected. Indeed it is implausible to infer that Rosales, who was not a club employee, even knew about the Onyango's complaint from seven months earlier. And the seven-month interval is, without more, too long to support an inference of retaliation. *Porter v. City of*

*Chicago*, 700 F.3d 944, 958 (7th Cir. 2012); *Wallscetti v. Fox*, 258 F.3d 662, 669 (7th Cir. 2001); *Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 986 (8th Cir. 2011).

We are left with the state-law claims. Onyango argues that the district court erred by exercising supplemental jurisdiction over his claims against the two lawyers for intentional infliction of emotional distress. He contends that the dismissal of the claims against the lawyers will preclude his emotional-distress claim against Nick & Howard (which was dismissed without prejudice), and therefore the court should not have decided those claims. Retention of jurisdiction to decide a supplemental state-law claim is appropriate when resolution of a state-law claim is clear. *See In re Repository Techs., Inc.*, 601 F.3d 710, 725 (7th Cir. 2010); *Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1251–52 (7th Cir. 1994). The prospect that the ruling in favor of the lawyers will preclude the claim against Nick & Howard might have required that the district court *retain* the emotional-distress claim against Nick & Howard, rather than dismiss it without prejudice. *See In re Repository Techs.*, 601 F.3d at 725; *Miller Aviation v. Milwaukee County Bd. of Supervisors*, 273 F.3d 722, 731 (7th Cir. 2001). So if anything Onyango got a break. But Nick & Howard has not cross-appealed the decision to relinquish that claim, so we leave alone the decision to dismiss that claim without prejudice. *See Greenlaw v. United States*, 554 U.S. 237 (2008).

On the merits, the district court correctly dismissed Onyango's claims for intentional infliction of emotional distress against the lawyers Wexler and Manella. Onyango disputes the district court's conclusion that their statements were privileged, but they were privileged because they arose in anticipation of judicial or quasijudicial proceedings. *See Atkinson v. Affronti*, 861 N.E.2d 251, 255 (Ill. App. Ct. 2006). In particular, Wexler's private conversation with Acosta, a potential witness, as part of a preliminary investigation is privileged. *See id.* at 255. And Manella wrote a private letter to the ARDC in response to its pending investigation, so his communication likewise was privileged. *See Lykowski v. Bergman*, 700 N.E.2d 1064, 1070–71 (Ill. App. Ct. 1998); *Parrillo, Weiss, & Moss v. Cashion*, 537 N.E.2d 851, 856 (Ill. App. Ct. 1989). In any case, the actions of Wexler and Manella did not go "beyond all possible bounds of decency." *Duffy v. Orlan Brook Condo. Owners' Ass'n*, 981 N.E.2d 1069, 1079 (Ill. App. Ct. 2012). Thus these claims easily fail.

Finally, Onyango argues that the district court abused its discretion by denying his motion under Rule 59(e). He asserts that the judge erred by relying on our original order affirming the denial of his injunction rather than the amended version we issued shortly thereafter. But the differences in the amended version are negligible and did not change any legal analyses or conclusions. Onyango also says he discovered new cases,

but these were available to him at the time he filed his motion to dismiss. *See In re Res. Tech. Corp.*, 624 F.3d 376, 388 (7th Cir. 2010) (Rule 59 requires showing that moving party discovered new information that could not have been discovered by exercising due diligence before judgment.) In any case, we have considered all of his arguments.

Accordingly, we AFFIRM the judgment of the district court.