# Illinois Official Reports

## Appellate Court

---

### *O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152

---

| | |
|---|---|
| Appellate Court Caption | JOSEPH MICHAEL O'CALLAGHAN and SUZANNE T. O'CALLAGHAN, Plaintiffs-Appellants, v. JACQUELINE M. SATHERLIE and KOPKA, PINKUS, AND DOLIN, P.C., Formerly d/b/a Kopka, Pinkus, Dolin and Eads, P.C., Kopka, Pinkus, Dolin and Eads, LLC, and Kopka, Pinkus, Dolin and Eads, Defendants-Appellees. |
| District & No. | First District, Third Division<br>Docket No. 1-14-2152 |
| Filed | July 8, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-L-011014; the Hon. Sheryl A. Pethers, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | John Pastos, of Chicago, for appellants.<br><br>Joshua G. Vincent and Adam R. Vaught, both of Hinshaw & Culbertson LLP, of Chicago, for appellees. |
| Panel | JUSTICE LAVIN delivered the judgment of the court, with opinion.<br>Justices Mason and Cobbs concurred in the judgment and opinion. |

**OPINION**

¶ 1    This appeal arises from the trial court's judgment dismissing a complaint filed by plaintiffs Joseph Michael O'Callaghan and Suzanne T. O'Callaghan (the O'Callaghans) against defendants Jacqueline M. Satherlie and her law firm, Kopka, Pinkus & Dolin, P.C. (Kopka). The O'Callaghans essentially alleged that Satherlie and Kopka, who had represented the O'Callaghans' adversaries in underlying litigation regarding toxic black mold that had infiltrated the O'Callaghans' property, had committed intentional infliction of severe emotional distress and were otherwise strictly liable for ultrahazardous activity, specifically, the remediation of toxic black mold. On appeal, the O'Callaghans assert the trial court improperly dismissed their complaint because (1) Satherlie and Kopka moved to dismiss pursuant to the wrong statute; (2) they did not file an answer pleading any affirmative defenses; (3) they lacked valid affirmative defenses; (4) the complaint sufficiently alleged causes of action; and (5) the trial court denied the O'Callaghans the opportunity to respond to the substance of the affirmative defenses raised in the motion to dismiss. We affirm the trial court's dismissal of the complaint, as the O'Callaghans' claims are barred by the absolute litigation privilege, which belongs to attorneys.

¶ 2                                        I. BACKGROUND
¶ 3                                     A. The Underlying Action
¶ 4    In 2007, the O'Callaghans filed a 14-count amended complaint against City Centre Condominium Association as well as various members of the association's board of directors (collectively the Association) (No. 07 L 000795). The O'Callaghans alleged, in pertinent part, that the Association had failed to properly remedy a ceiling leak, causing toxic black mold to infiltrate their condominium. The complaint's caption named the Association's counsel, Satherlie and Kopka, as defendants and asked the court to enter damages against them. In 2008, the trial court dismissed the majority of the counts with prejudice, including the O'Callaghans' requests for relief against Satherlie and Kopka.

¶ 5    Years later, in 2011, the O'Callaghans filed a second-amended complaint, omitting Satherlie and Kopka as defendants but adding several parties involved with the installation of heating, ventilating and air conditioning equipment in the condominium building. That complaint essentially alleged that improper installation led to the precipitation of moisture onto the O'Callaghans' drywall drop ceiling. In addition, the O'Callaghans alleged that while attempting remedial measures, defendant Steamatic Chicago South West, Inc., doing business as Brouwer Brothers Steamatic (Steamatic), removed a containment barrier and, under the direction of defendant Environ International Corporation (Environ), which was in turn acting under the direction of Satherlie, allowed a large opening to remain unsealed for an hour and a half. The O'Callaghans similarly alleged that Steamatic was operating at the direction of Environ and Environ was operating at the direction of Satherlie when Steamatic sealed a cavity in the wall and ceiling while still wet and subsequently cut slits in the plastic seal, destroying the seal's effectiveness. According to the O'Callaghans, these actions permitted the toxic mold to spread.

¶ 6        On May 14, 2013, the trial court entered an agreed order dismissing the case with prejudice as to the Association defendants. The case against Steamatic and Environ, however, remained pending. It appears from the circuit court website that the rest of the case was voluntarily dismissed by agreement on October 22, 2013, but neither the record nor the parties' briefs reveal the fate of the remaining claims.

¶ 7                                    B. The Present Action

¶ 8        Meanwhile, on October 3, 2013, the O'Callaghans filed the instant action against Satherlie and Kopka, alleging intentional infliction of severe emotional distress and strict liability for ultrahazardous activity and seeking punitive damages (No. 13 L 011014). The complaint alleged that in the underlying action, Satherlie failed to disclose an expert's recommendations for remediating the mold in 2007, a report not discovered by the O'Callaghans until some unspecified time later. The complaint also alleged that in light of the report, Satherlie and Kopka knew that the defendants in the underlying action had no meritorious defense but nonetheless contrived a defense that the O'Callaghans had caused the toxic mold to form due to the unapproved modification of their condominium. In addition, rather than producing in discovery the Association's approval of the prior condominium owners' application to so modify the condominium, Satherlie concealed such information. Satherlie and Kopka, in bad faith, unnecessarily prolonged the underlying action based on a nonmeritorious defense, filed baseless motions and discovery, refused to produce discovery until ordered to do so, contested the O'Callaghans' meritorious motions and concealed documents. The O'Callaghans also alleged that Satherlie and Kopka refused to negotiate terms for inspecting the O'Callaghans' condominium, did not participate in settlement conferences or mediation in good faith, and obtained an improper court order prohibiting the O'Callaghans from meeting with Association members to resolve the issues themselves. When experts hired by Satherlie and Kopka did not find the O'Callaghans' actions were the source of the water leaks, Satherlie and Kopka attempted to have the experts amend their reports and fired them when they would not do so.

¶ 9        As in the underlying action, the O'Callaghans alleged that Satherlie directed the inspectors to open or remove containment barriers that had been erected to prevent the spread of mold, thereby allowing the toxic black mold to spread. The O'Callaghans were required to obtain court orders to have containment barriers re-erected. There was also ill will between the O'Callaghans and other condominium owners in the building because the underlying action prevented other unit owners from selling or refinancing their properties and Satherlie had told various owners that the O'Callaghans were prolonging litigation by failing to cooperate. Additionally, the unlicensed roofing consultants hired by Satherlie and Kopka made inadequate repairs. The O'Callaghans further alleged that Satherlie was motivated by economic benefit to her in the form of attorney fees and engaged in the aforementioned conduct without her clients' knowledge.

¶ 10       Satherlie and Kopka then moved to dismiss the complaint, citing section 2-615 of the Code of Civil Procedure (the Code) (735 ILCS 5/2-615 (West 2012)). The motion argued that the O'Callaghans' claims were barred by an attorney's absolute litigation privilege, *res judicata*, and a policy against claim-splitting. In addition, the motion argued that the O'Callaghans had not stated a claim for intentional infliction of emotional distress or strict liability and that punitive damages were not available for the former cause of action. Furthermore, Satherlie and

Kopka noted that the trial court could take judicial notice of the underlying proceeding, but attached certain documents from that proceeding for the court's convenience.

¶ 11　　In response, the O'Callaghans argued that Satherlie and Kopka had not filed an answer containing affirmative defenses, and that the affirmative defenses were otherwise outside the scope of section 2-615. The O'Callaghans declined, however, to respond to the merits of the defenses raised. As to the absolute attorney litigation privilege, they stated:

> "For the record, Plaintiffs will not respond to the specious nature of this argument since it is not properly before this court. Plaintiffs reserve the right to respond in detail if Defendants raise this argument in a proper motion."

The O'Callaghans made similar statements with respect to the other affirmative defenses. They also argued that their complaint properly stated causes of action but sought leave to withdraw their request for punitive damages for intentional infliction of emotional distress. In reply, Satherlie and Kopka added that the affirmative defenses were appropriately raised under section 2-615 because they were based on either allegations that were in the complaint or matters of which the court could take judicial notice. In the alternative, the court was entitled to reconstrue the motion under the appropriate section of the Code.

¶ 12　　At a hearing on June 25, 2014, the trial court found that although there was some dispute regarding whether the motion was more appropriate under section 2-615 or section 2-619 of the Code, it did not make a difference in this instance. The court then granted the motion, stating as follows:

> "I do think that it could also be considered a 2-619, but it's the kind of 2-619 that wouldn't require an affidavit. They're still looking at the face of the complaint and it's just defective. It's so defective that I tend to think it's close to being sanctionable.
>
> The reason I'm granting the 2-615 and dismissing it with prejudice and not giving you a chance to amend it or replead it is I don't see any way in this world that you can plead valid causes of action against your opponents in an underlying suit for things like intentional infliction of emotional distress. There's no duty here. There is also a public policy against this kind of suit. Litigation about litigation, you know? You had your litigation. You either won or lost, and I'm assuming you lost, because this is [*sic*] your response to losing is bring this. So I could be wrong, that's what the appellate court is for.
>
> But this is one of the strangest–and I think that's kind to put it that way, strangest lawsuits I've ever seen, okay?"

The O'Callaghans now appeal.

¶ 13　　　　　　　　　　　　　　　II. ANALYSIS
¶ 14　　　　　　　　　　　A. Illinois Supreme Court Rule 341(h)
¶ 15　　As a threshold matter, we note that the O'Callaghans' briefs suffer from several deficiencies. Their statement of facts omits citations to the record. See Ill. S. Ct. R. 341(h)(6) (eff. Feb. 6, 2013). Their arguments contain citations to case law which lack pinpoints or are inaccurate. See Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013). In addition, one quotation is followed by a citation to a case that does not contain the quoted material whatsoever. In other instances, the O'Callaghans have failed to cite law supporting their legal premises. *Id.* Moreover, their arguments omit necessary citations to the record. *Id.* This court is not a depository into which

litigants may dump the burden of research (*Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶¶ 7, 13), and the failure to comply with court rules warrants disregarding an appellant's contentions (*Diaz v. Legat Architects, Inc.*, 397 Ill. App. 3d 13, 40 (2009)). Because we understand the O'Callaghans' contentions, we will resolve the merits of this appeal, but the aforementioned deficiencies must not be repeated.

¶ 16                           B. Section 2-615 v. Section 2-619

¶ 17    On appeal, the O'Callaghans assert that the trial court improperly dismissed their complaint, an issue that we review *de novo*. *Khan v. Deutsche Bank AG*, 2012 IL 112219, ¶ 47. Accordingly, we may affirm the judgment on any basis in the record, regardless of the trial court's reasoning. *Garrick v. Mesirow Financial Holdings, Inc.*, 2013 IL App (1st) 122228, ¶ 28. For that reason, we need not concern ourselves with the O'Callaghans' numerous challenges to the trial court's particular rationale.

¶ 18    We first address their contention that we must reverse the dismissal of this action because the motion to dismiss was improperly filed under section 2-615, rather than section 2-619. A motion to dismiss under section 2-615 challenges a complaint's legal sufficiency based on defects apparent on the face of the complaint. *Khan*, 2012 IL 112219, ¶ 47. In ruling on a section 2-615 motion to dismiss, the court must accept all well-pleaded facts, as well as any reasonable inferences to be drawn therefrom, as true. *Id*. The court can also consider judicial admissions in the record and matters of which the court is entitled to take judicial notice. *K. Miller Construction Co. v. McGinnis*, 238 Ill. 2d 284, 291 (2010). As a result, a defendant may properly raise an affirmative defense in a section 2-615 motion if the defense is apparent from the face of the complaint. *Id*. at 292; *R&B Kapital Development, LLC v. North Shore Community Bank & Trust Co.*, 358 Ill. App. 3d 912, 921 (2005). Similarly, although a defendant generally must plead an affirmative defense or face forfeiture, a defendant need not do so and instead may raise the affirmative defense in a section 2-615 motion if the affirmative defense is apparent from the face of the complaint. *Fillmore v. Walker*, 2013 IL App (4th) 120533, ¶ 28.

¶ 19    In comparison, section 2-619 permits dismissal based on certain defects or defenses, and provides that the motion must be supported by affidavit where the grounds for the motion do not appear on the face of the complaint. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 485 (1994). Because section 2-619(a)(9) permits dismissal where a plaintiff's claims are "barred by other *affirmative matter* avoiding the legal effect of or defeating the claim" (emphasis added) (735 ILCS 5/2-619(a)(9) (West 2006)), rather than *affirmative defenses*, section 2-619 is not the exclusive means for obtaining dismissal based on an affirmative defense. See *K. Miller Construction Co.*, 238 Ill. 2d at 291-92. In addition, although section 2-619, like section 2-615, permits attacks based on defects on the complaint's face, those defects should be coupled with grounds not appearing of record. *Illinois Graphics Co.*, 159 Ill. 2d at 485. With that said, courts have allowed section 2-619 motions even though the only grounds for dismissal may be a defect on the face of the pleadings. *Id*. Accordingly, courts allow some overlap between motions filed under section 2-615 and section 2-619. *Id*.; *Murcia v. Textron, Inc.*, 342 Ill. App. 3d 433, 437 (2003). A confluence between the two sections exists where an affirmative matter is apparent on the face of the complaint. *Illinois Graphics Co.*, 159 Ill. 2d at 486; *Storm & Associates, Ltd. v. Cuculich*, 298 Ill. App. 3d 1040, 1047 (1998).

¶ 20    We find that the case before us falls within this confluence and, thus, the motion to dismiss was appropriately filed under section 2-615. See also *Illinois Graphics Co.*, 159 Ill. 2d at 487 (finding the grounds of the motion to dismiss could properly be considered under section 2-615 or section 2-619(a)(9)); *Jordan v. Knafel*, 355 Ill. App. 3d 534, 539 (2005) (where the defendant did not challenge the complaint's failure to plead an element of the claims but raised a public policy argument based on the face of the pleadings, the motion fell within the confluence of section 2-615 and section 2-619 and the court reviewed the motion under the former statute). As stated, a complaint's allegations as well as facts of which we may take judicial notice are appropriate for consideration under section 2-615. In addition, this court can take judicial notice of the underlying action filed by the O'Callaghans. See *Cushing v. Greyhound Lines, Inc.*, 2012 IL App (1st) 100768, ¶ 5; *Curtis v. Lofy*, 394 Ill. App. 3d 170, 172 (2009); *Goran v. Glieberman*, 276 Ill. App. 3d 590, 596 (1995). This is particularly appropriate given that the complaint relies on that proceeding. As a result, Satherlie's and Kopka's contention that the complaint's allegations are improperly based on those attorneys' roles in the prior proceeding do not require consideration of any matter outside the scope of section 2-615. *Cf. Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 91-92 (1996) (where the section 2-615 motion relied on portions of an article not appearing in the complaint, and judicial notice was not at issue, the motion should have been filed and considered under section 2-619). Because the absolute attorney litigation privilege appears on the face of the complaint, the motion was appropriately filed under section 2-615.

¶ 21    Were we to assume the motion to dismiss should have been filed under section 2-619, we would still find no reversible error. See *Johnson v. Johnson & Bell, Ltd.*, 2014 IL App (1st) 122677, ¶ 15 (considering absolute privilege under section 2-619). A defendant's motion to dismiss is not defeated merely by choosing the wrong statutory mechanism where the plaintiff suffered no prejudice from the improper label. *Wallace v. Smyth*, 203 Ill. 2d 441, 447 (2002); *Universal Underwriters Group v. Pierson*, 337 Ill. App. 3d 893, 897-98 (2003). In this instance, any potential prejudice to the O'Callaghans resulted from their own heedlessness, not the statutory mechanism identified in the motion to dismiss.

¶ 22    Contrary to the O'Callaghans' contention, they were given adequate notice and an opportunity to respond to the merits of the motion, including the defenses raised therein. *Hastings v. State*, 2015 IL App (5th) 130527, ¶ 17 (stating that due process requires adequate notice and an opportunity to be heard). Specifically, the bases for the motion to dismiss, including the absolute litigation privilege, were perfectly clear. Instead of responding to the merits, however, the O'Callaghans purported to "reserve the right to respond in detail if Defendants raise this argument in a proper motion." The O'Callaghans never possessed such a right, as the fantasy practice they proposed would unnecessarily prolong litigation. Indeed, they have cited no legal authority indicating otherwise. They had only the right to file one response containing any arguments they possessed against dismissal. Furthermore, an argument not raised in a plaintiff's response to a motion to dismiss is forfeited. *Jespersen v. Minnesota Mining & Manufacturing Co.*, 288 Ill. App. 3d 889, 894-95 (1997). Bluntly put, their procedural hubris operated to their decided detriment. That said, their briefs filed on appeal have adequately informed this court of their arguments regarding the merits of the defenses raised, and these arguments fail to persuade. Accordingly, the O'Callaghans were not prejudiced by any error in labeling the motion to dismiss.

## C. Absolute Attorney Litigation Privilege

¶ 24    Illinois's absolute attorney litigation privilege is generally based on section 586 of the Restatement (Second) of Torts, which provides:

> "An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding." Restatement (Second) of Torts § 586 (1977).

This privilege is intended to provide attorneys with "the utmost freedom in their efforts to secure justice for their clients." (Internal quotation marks omitted.) *Kurczaba v. Pollock*, 318 Ill. App. 3d 686, 701-02 (2000). This privilege also furthers an attorney's need to fully and fearlessly communicate with his client (*Popp v. O'Neil*, 313 Ill. App. 3d 638, 642-34 (2000)) and the free flow of truthful information to the courts (*Edelman, Combs & Latturner v. Hinshaw & Culbertson*, 338 Ill. App. 3d 156, 165-66 (2003)). In determining whether the privilege should apply, we have also considered whether a limitation on the privilege's application would frustrate an attorney's ability to settle or resolve cases without resorting to expensive litigation, as many disputes are best resolved out of court. *Atkinson v. Affronti*, 369 Ill. App. 3d 828, 833 (2006). The privilege is limited, however, to instances where the administration of justice and public service require immunity. *Kurczaba*, 318 Ill. App. 3d at 706.

¶ 25    In light of these policies, an attorney's motives are irrelevant (*Popp*, 313 Ill. App. 3d at 642), and she is not required to investigate her client's claim for legal sufficiency before taking action (*Atkinson*, 369 Ill. App. 3d at 834). Furthermore, no liability will attach even at the expense of uncompensated harm to the plaintiff. Compare *Golden v. Mullen*, 295 Ill. App. 3d 865, 870 (1997), with *Stein v. Krislov*, 2013 IL App (1st) 113806, ¶ 35 (the privilege is intended to promote zealous advocacy and does not apply where there are no safeguards against abuse of the privilege). With that said, communications must relate to proposed or pending litigation (*Golden*, 295 Ill. App. 3d at 870), and must be in furtherance of representation (*Kurczaba*, 318 Ill. App. 3d at 706). This pertinency requirement is not strictly applied (*Popp*, 313 Ill. App. 3d at 642) and we resolve all doubts in favor of pertinency (*Atkinson*, 369 Ill. App. 3d at 832).

¶ 26    Based on the restatement's specific reference to defamation and communications, the absolute attorney privilege has historically been applied to attorneys' communications. The privilege applies to communications made before, during (*Edelman, Combs & Latturner*, 338 Ill. App. 3d at 165), and after litigation (*Stein*, 2013 IL App (1st) 113806, ¶ 33). In addition, the privilege applies to out-of-court communications between an attorney and his client regarding pending litigation as well as out-of-court communications between the litigants' attorneys. *Golden*, 295 Ill. App. 3d at 870. Although the restatement expressly refers to defamation, other jurisdictions have extended the absolute attorney privilege to intentional infliction of emotional distress claims under certain circumstances. *Thompson v. Frank*, 313 Ill. App. 3d 661, 662, 665 (2000). Recently, this court applied the absolute litigation privilege to causes of action other than defamation, specifically, negligent infliction of emotional distress and breach of contract. *Johnson*, 2014 IL App (1st) 122677, ¶ 17. The court agreed with case law from other jurisdictions finding that the privilege would be meaningless if a party could merely recast its cause of action to avoid the privilege's effect. *Id.*

¶ 27 Contrary to the O'Callaghans' suggestion, we find that the absolute attorney litigation privilege may extend beyond communications by attorneys and defamation claims. *Cf. Zdeb v. Baxter International, Inc.*, 297 Ill. App. 3d 622, 629 (1998) (after determining that the absolute privilege did not apply to counsel's client, the court found, in *dicta*, that the privilege did not apply beyond causes of action expressly referred to in the restatement). Although Illinois generally follows the restatement, it appears that our supreme court has never expressly adopted this particular provision and all of its language. Thus, while section 586 speaks in terms of defamation, that does not prevent the appellate court from applying the privilege outside of that context if Illinois policy would be furthered by doing so. See *Ripsch v. Goose Lake Ass'n*, 2013 IL App (3d) 120319, ¶ 17 (observing that restatements are not binding unless specifically adopted by our supreme court). We agree with *Johnson*'s indication that policy would be furthered by disregarding arbitrary distinctions. In addition, it is well settled that "[t]here is no mechanistic formula to define what is and what is not the practice of law." *Downtown Disposal Services, Inc. v. City of Chicago*, 2012 IL 112040, ¶ 15. Because conduct may be performed in the practice of law, counsel may engage in conduct to secure justice for their clients. Limiting the privilege to communications, as opposed to conduct, would undermine the policies behind the privilege. Conversely, the pertinency requirement prevents an attorney from shielding unrelated misconduct from liability.

¶ 28 This determination also comports with this court's holding that "There is no civil cause of action for misconduct which occurred in prior litigation." *Harris Trust & Savings Bank v. Phillips*, 154 Ill. App. 3d 574, 585 (1987). Instead, parties should attempt to redress injuries from misconduct in judicial proceedings in the same litigation. *Id*. Were it otherwise, litigation would never end. *Id*. Moreover, it is improper for a trial court to review prior litigation that occurred before a different judge. *Id*.

¶ 29 In the underlying proceeding, Satherlie and Kopka defended their clients against the O'Callaghans. The O'Callaghans now contend that those attorneys made the following improper communications and engaged in the following improper conduct: they engaged in discovery violations, failed to disclose evidence, concealed evidence, contrived a bad-faith defense, failed to properly participate in settlement and mediation, obtained a court order against the O'Callaghans, attempted to alter expert opinions, ordered workers to remove barriers intended to contain mold, lied to the Association regarding the underlying litigation, and undertook insufficient means to remedy the mold. These alleged improprieties clearly pertained to the role of Satherlie and Kopka as attorneys in the underlying action and were done in furtherance of representing their clients. In addition, Satherlie's alleged directions to the individuals remedying the condominium were not made to an outsider within the meaning of the privilege; rather, neither Satherlie nor the workers would have had reason to be in the O'Callaghans' condominium but for the mold, the subject of this litigation. *Cf. August v. Hanlon*, 2012 IL App (2d) 111252, ¶¶ 36-37 (privilege did not apply where allegedly defamatory statements were made to a newspaper report not connected to the litigation and the defendant did not explain how applying the privilege would further public policy). Furthermore, directly observing the subject of the dispute clearly furthered the Association's interest in limiting liability.

¶ 30 As stated, motives and diligence before taking the challenged actions are irrelevant for purposes of the litigation privilege. See *Popp*, 313 Ill. App. 3d at 642. In addition, even assuming that Satherlie and Kopka were motivated by economic benefit, that motivation is not

mutually exclusive with serving their clients. To the extent the O'Callaghans have alleged in the present complaint that Satherlie and Kopka undertook the aforementioned actions without their clients' knowledge, attorneys are generally deemed to be agents of their clients. See *Kay v. Prolix Packaging, Inc.*, 2013 IL App (1st) 112455, ¶ 67 (observing that attorneys are agents of their clients for the purpose of making admissions in all matters relating to an action). In addition, the O'Callaghans have failed to cite any law in support of their conclusion that they can overcome that relationship here. See *Hall*, 2012 IL App (2d) 111151, ¶ 12 ("Mere contentions, without argument or citation to authority, do not merit consideration on appeal."). Furthermore, there is no suggestion that the Association was dissatisfied with the representation it received. *Cf. Edelman, Combs & Latturner*, 338 Ill. App. 3d at 166 (where communications were made to individuals to the litigation and the communications did not serve the interest of the defense's client, the attorney litigation privilege did not apply).

¶ 31 The underlying proceeding rebuts any suggestion that Satherlie and Kopka were not acting in furtherance of representing their clients. Each of the alleged acts challenged can fairly be said to be in furtherance of the Association's interest, *i.e.*, limiting damages, regardless of whether those acts were entirely proper. We further reject the O'Callaghans' assertion that finding the privilege applies in circumstances such as this leaves litigants without recourse and permits attorney misconduct to go unchecked. The conduct of attorneys will be limited by the pertinency requirement. Moreover, where misconduct has occurred in a given proceeding, an injured party may generally seek recourse in that particular proceeding, unlike the method the O'Callaghans have pursued here. See, *e.g.*, Ill. S. Ct. R. 219(c) (eff. July 1, 2002) (sanctions may be imposed against a party's attorney, including reasonable expenses incurred due to misconduct).

¶ 32 III. CONCLUSION

¶ 33 Here, the trial court properly dismissed the O'Callaghans' complaint as the absolute attorney litigation privilege barred their claims. In addition, because it appears there was no manner in which the O'Callaghans could have amended their complaint to survive dismissal, we cannot say the trial court abused its discretion by denying them leave to amend their complaint. See *In re Marriage of Lyman*, 2015 IL App (1st) 132832, ¶ 51 (we review the trial court's denial of leave to amend for an abuse of discretion). We affirm the trial court's judgment.

¶ 34 Affirmed.