# Illinois Official Reports

## Appellate Court

---

**Scarpelli v. McDermott Will & Emery LLP, 2018 IL App (1st) 170874**

---

| | |
|---|---|
| Appellate Court Caption | FRANK J. SCARPELLI JR., and MARGARET SCARPELLI, Plaintiffs-Appellants, v. MCDERMOTT WILL & EMERY LLP, Defendant-Appellee.–ANNE-MARIE POINCELET, in Her Individual Capacity, as Beneficiary of the Pamela J. Poincelet Trust No. 1 and the Pamela J. Poincelet Irrevocable Trust No. 1, and as Trustee of the Pamela J. Poincelet Trust No. 1 and the Pamela J. Poincelet Irrevocable Trust No. 1, Plaintiff, v. FRANK J. SCARPELLI JR., in His Individual Capacity and as Former Trustee of the Pamela J. Poincelet Trust No. 1 and the Pamela J. Poincelet Irrevocable Trust No. 1, and MARGARET O. SCARPELLI, in Her Individual Capacity, Defendants. |
| District & No. | First District, Third Division<br>Docket Nos. 1-17-0874, 1-17-1011 cons. |
| Filed | June 27, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 2016-L-8816, 2015-CH-15087; the Hon. Celia G. Gamrath, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Ted A. Meyers, Jonathan P. Mincieli, and Michael W. Lenert, of Meyers & Flowers, LLC, of St. Charles, David M. Macksey, of Johnson & Bell, Ltd., of Chicago, and Daniel F. Konicek and Amanda J. Hamilton, of Konicek & Dillon, P.C., of Geneva, for appellants. |

Stephen Novack, Richard G. Douglass, and Yvette V. Mishev, of Novack and Macey LLP, of Chicago, for appellee.

Panel          JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion.
Justices Howse and Lavin concurred in the judgment and opinion.


**OPINION**

¶ 1      Following the filing of individual and amended complaints by plaintiffs-appellants Frank J. Scarpelli Jr. and Margaret Scarpelli (plaintiffs or as named), defendant-appellee McDermott Will & Emery LLP (McDermott) filed a motion to dismiss them both pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2016)). The trial court granted defendant's motion with prejudice, based on the attorney litigation privilege. Plaintiffs appeal, contending that the trial court should not have applied the attorney litigation privilege to this cause as it does not cover prelitigation conduct, does not apply to the type of conduct they allege occurred, and leaves them with no recourse.[1] They ask that we reverse the trial court's dismissal of their claims with prejudice and for other relief this court deems fair and just. For the following reasons, we affirm.

¶ 2                          BACKGROUND

¶ 3      This cause involves multiple underlying cases principally involving Frank, his wife Margaret, Anne-Marie Poincelet, and McDermott, Anne-Marie's attorney. However, the focus of the instant appeal revolves around intrusion upon seclusion claims brought separately by Frank and Margaret against McDermott and consolidated by our court. Anne-Marie is not a party to this appeal.

¶ 4      Frank and Anne-Marie are cousins. Their extended family developed several businesses, including many property companies and apartment complexes, with their principal place of business in Carpentersville, Illinois (Kane County). Frank worked for these family businesses. In 1994, Frank began helping Anne-Marie's mother, his aunt Pamela Poincelet, with the management of her personal properties and financial affairs. Eventually, Pamela formed two trusts. She named Frank as trustee of both of them, and she named Anne-Marie as her beneficiary. In subsequent years, Pamela named Frank as her agent and gave him power of attorney over her health care as well as her property. Pamela died in 2011, leaving Anne-Marie as her heir. Frank became the executor of Pamela's estate and, after her death, continued to act as trustee of her two trusts.

---

[1]For the record, Frank and Margaret, each represented by different counsel, filed separate opening briefs on appeal. These briefs, however, are essentially the same, almost word-for-word in fact, and assert the same facts and issues for our review. Additionally, we note that Margaret filed a reply brief in response to defendant's appellee brief. Frank moved our court to join in Margaret's reply brief, and we granted his motion.

¶ 5	In early 2015, Anne-Marie confronted Frank and Margaret about missing funds in Pamela's accounts and trusts. Anne-Marie believed Frank and Margaret had misappropriated millions of dollars from them and used the proceeds for their personal benefit. The day after this confrontation, Frank was terminated from his employment at the family businesses. The locks in the offices were changed, and Frank was not permitted to enter his office or the businesses' premises, where he kept various documents regarding Margaret and their personal affairs. Anne-Marie hired McDermott to represent her in investigating and potentially pursuing litigation concerning Frank and Margaret's alleged misappropriation. Frank hired attorney James Tunick to represent him.[2]

¶ 6	In March 2015, McDermott contacted Tunick to set up a meeting between Frank, Margaret, and Anne-Marie to discuss the missing money and attempt to settle the matter. A meeting was arranged for March 19, 2015, at McDermott's office. On that day, Frank and Margaret, along with Tunick, arrived at McDermott's building. According to Frank and Margaret's complaints, they were met by a man and escorted to a small room, where they met another man who was introduced to them as an "ex-FBI agent." While in this room with the door closed, the "ex-FBI agent" frisked Frank by patting him down and, with Margaret's permission, searched her purse. The men then escorted Frank, Margaret, and Tunick into a large conference room, where several McDermott attorneys were waiting for them. On the conference room table were stacks of documents, including drafts of deeds with legal descriptions of every property and home Frank and Margaret owned, trust papers, letters of direction, and assignments listing Frank and Margaret's banking institutions and bank account numbers.

¶ 7	During the meeting, Frank and Margaret were presented with a document drafted by McDermott, titled "Tolling & Asset Management Agreement" (Asset Agreement). This document stated that Frank and Margaret had the benefit of counsel of their choice and had been offered the opportunity to review the agreement with him, that Anne-Marie had certain potential legal claims against them for diversion or dilution of funds, that Frank and Margaret met with forensic accountants and admitted wrongdoing, and that the parties were exploring the possibility of settling these potential claims following a full accounting. The Asset Agreement prescribed that Frank and Margaret agreed not to "distribute, expend, or transfer any real or personal property" until all such claims were resolved to Anne-Marie's satisfaction. To effectuate this, the Asset Agreement provided that Frank and Margaret would put many of their assets, cash, and real property into two trusts: the Frank Scarpelli 2015 Special Trust, with Frank and Tunick as cotrustees, and the Margaret Scarpelli 2015 Special Trust, with Margaret and Tunick as cotrustees. It further provided that Anne-Marie would exercise certain supervisory controls over these trusts, including the power to veto any sale, exchange, or distribution of any trust asset; the power to appoint trustees; and the power to remove trustees without cause at any time. Finally, the Asset Agreement stated that Frank and Margaret agreed to pay all of Anne-Marie's costs in the matter, including attorney fees, investigative fees, and forensic accountant fees. Frank and Margaret were also given a copy of a document, titled "Verified Complaint," and told that someone from McDermott was waiting at the courthouse with instructions to file it if they did not immediately sign the documents in the conference

_____

[2]There is no indication in the record that Margaret, at this point, hired any attorney to represent her regarding Anne-Marie's misappropriation allegations.

room. With Tunick present, both Frank and Margaret signed all the documents presented to them that day, including the Asset Agreement.

¶ 8 Several months later, in October 2015, Anne-Marie, individually and as beneficiary and trustee of Pamela's trusts, filed a cause of action in the circuit court of Cook County against Frank and Margaret for breach of the Asset Agreement and for theft. McDermott represented Anne-Marie in the cause.

¶ 9 In response, in November 2015, Margaret filed a separate cause of action in the circuit court of Kane County against Anne-Marie and McDermott. In December 2015, Frank did the same, filing a substantially similar (but separate) cause of action in that same court against Anne-Marie and McDermott. Count I of their complaints was asserted against Anne-Marie only and sought declaratory judgment that the documents from the March 19 meeting were invalid and unenforceable because Frank and Margaret signed them under duress. Count II of their complaints, directed at both Anne-Marie and McDermott, alleged conversion/trespass to chattels and claimed that Anne-Marie "and/or someone acting on her behalf" obtained their "private and/or confidential information" and that McDermott maintained possession and exercised unauthorized control over it. And, count III of their complaints, also directed against both Anne-Marie and McDermott, alleged intrusion upon seclusion and claimed that Anne-Marie and McDermott intentionally intruded upon their private affairs and misappropriated this information to compel them to sign the March 19 documents.

¶ 10 Anne-Marie and McDermott moved the circuit court of Kane County to dismiss plaintiffs' causes of action or to transfer them to Cook County, where Anne-Marie's claim against plaintiffs was pending. In response, Margaret voluntarily agreed to transfer count I (declaratory judgment as against Anne-Marie only) of her complaint to the circuit court of Cook County, and voluntarily dismissed count II (conversion/trespass as against Anne-Marie and McDermott) of her complaint with prejudice, leaving, as to McDermott, only count III (intrusion upon seclusion) in Kane County. Eventually, the circuit court of Kane County transferred both plaintiffs' causes in their entirety to Cook County, where they were consolidated with Anne-Marie's initial cause.

¶ 11 McDermott moved to dismiss both Frank's and Margaret's count III of intrusion upon seclusion as against it.[3] Following argument—which centered extensively around the case of *O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152, and the attorney litigation privilege—the trial court granted McDermott's motion, with prejudice. The trial court found several points of *O'Callaghan* critical to the instant cause, including its interpretation that the attorney litigation privilege is "absolute," irrespective of motive, and that "no liability will attach even at the expense of an uncompensated harm" to a plaintiff. The trial court further declared that *O'Callaghan* "makes it clear" that both attorney conduct and communications are covered, so long as they "relate to proposed or pending litigation" and are "in furtherance of representation." Then, in applying *O'Callaghan* to the instant cause, the trial court declared

---

[3]There was much motion practice in this cause, as plaintiffs continued throughout litigation to file individually, rather than join their cases. For example, the operative complaints involved herein were Margaret's second amended complaint (which saw her dismiss count II against McDermott but retain count III against it) and Frank's third amended complaint (which retained both counts II and III against McDermott). As issues are not raised on appeal in this respect, we have simplified this to merely provide a background context for the procedural posture of this cause.

- 4 -

that, from the pleadings, it was "clear that any conduct or actions that the law firm of McDermott took was in furtherance of representation of Anne-Marie Poincelet and it was in connection with proposed or imminently pending litigation," with any doubts as to this finding "to be resolved in favor of finding that the privilege applies." Accordingly, the trial court dismissed plaintiffs' counts against McDermott for intrusion upon seclusion pursuant to the "absolute attorney litigation privilege."[4]

¶ 12                                                    ANALYSIS

¶ 13    On appeal, plaintiffs contend that the trial court erred in dismissing their intrusion upon seclusion claims as against McDermott.[5] Essentially, plaintiffs claim that the trial court misinterpreted and misapplied the attorney litigation privilege by concluding that it covers prelitigation conduct in general, by finding that it applied to the type of conduct alleged in this cause specifically, and by upholding its determination even though plaintiffs are left with no recourse. Based upon our review of the record, as well as the law regarding the attorney litigation privilege and, particularly, *O'Callaghan*, we disagree.

¶ 14    We note for the record that the parties agree as to the applicable standard of review. Briefly, the trial court's dismissal was premised on McDermott's section 2-615 motion. Such motions attack the legal sufficiency of the complaint by alleging defects on its face, and upon their grant, we are to examine the complaint's allegations in the light most favorable to the plaintiff, accepting as true all well-pled facts. See *In re Estate of Powell*, 2014 IL 115997, ¶ 12; *Bunting v. Progressive Corp.*, 348 Ill. App. 3d 575, 580 (2004). However, if these are not sufficient to state a cause of action upon which relief may be granted, then dismissal of the cause is appropriate. *Powell*, 2014 IL 115997, ¶ 12 ("a court cannot accept as true mere conclusions unsupported by specific facts" and dismissal is proper where no set of facts, as apparent from the pleadings, can be proven that would entitle the plaintiff to recover). Our review follows a *de novo* standard. *Powell*, 2014 IL 115997, ¶ 12 (appeal from dismissals pursuant to section 2-615 are reviewed *de novo*). Additionally, we are also to use *de novo* review when examining whether the attorney litigation privilege applies in a cause. *Popp v. O'Neil*, 313 Ill. App. 3d 638, 642 (2000) (this is a question of law).

¶ 15    We find that the trial court properly dismissed Frank's and Margaret's intrusion upon seclusion claims pursuant to McDermott's section 2-615 motion.

¶ 16    Undeniably, the instant cause centers on the attorney litigation privilege, its applicability to the facts herein, and *O'Callaghan*. To begin, and short of presenting a dissertation on its

[4]Again, we simplify the motion practice in this cause, as no issues are raised concerning it. The trial court's order, upon the parties' agreement, declared (and clarified) that plaintiffs' counts against McDermott were dismissed with prejudice "in their entirety." Following this decision, Margaret went on to file a third amended complaint as against Anne-Marie only for declaratory judgment and intrusion upon seclusion (her original counts I and III). Likewise, Frank filed a fourth amended complaint, officially dismissing his original count II of conversion against McDermott, but retaining counts against Anne-Marie. Plaintiffs' litigation as against Anne-Marie and Anne-Marie's litigation against plaintiffs are not part of the instant appeal.

[5]With plaintiffs having voluntarily dismissed their claims for conversion/trespass to chattels as against McDermott, and with all their remaining counts now directed against Anne-Marie only, plaintiffs' intrusion upon seclusion claims as against McDermott are, pursuant to the parties' agreement, the only ones we are called to review on appeal at this time.

historical development, it suffices here to say that the attorney litigation privilege is well established, and very much alive, in our law. It derives from section 586 of the Restatement (Second) of Torts, which states:

> "An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding." Restatement (Second) of Torts § 586 (1977).

¶ 17    There are many legal principles at play here. At its foundation, the privilege is meant to provide attorneys with "the utmost freedom in their efforts to secure justice for their clients." (Internal quotation marks omitted.) *Kurczaba v. Pollock*, 318 Ill. App. 3d 686, 701-02 (2000). It is also intended to further attorneys' need to fully and fearlessly communicate with their clients (*Popp*, 313 Ill. App. 3d at 642-43), as well as to promote the free flow of truthful information to courts (*Edelman, Combs & Latturner v. Hinshaw & Culbertson*, 338 Ill. App. 3d 156, 165-66 (2003)). Ultimately, our courts have consistently made clear that "[a]n attorney must be at liberty to candidly and zealously represent his client in communications to potential opposing parties in litigation or other proceedings without the specter of civil liability for his statements clouding his efforts." *Atkinson v. Affronti*, 369 Ill. App. 3d 828, 833 (2006).

¶ 18    Operationally, the litigation privilege affords an attorney complete immunity with respect to the communications he makes. *Popp*, 313 Ill. App. 3d at 642 (it affords complete immunity); accord *Atkinson*, 369 Ill. App. 3d at 832 (it is an absolute privilege). This is true regardless of the attorney's motives in making that communication and irrespective of the attorney's knowledge of the falsity of it or the unreasonableness of his conduct. See *Popp*, 313 Ill. App. 3d at 642; accord *Atkinson*, 369 Ill. App. 3d at 834; see also *Johnson v. Johnson & Bell, Ltd.*, 2014 IL App (1st) 122677, ¶ 15. The privilege applies to communications made before and during litigation (see *Edelman*, 338 Ill. App. 3d at 165), as well as after litigation (see *Stein v. Krislov*, 2013 IL App (1st) 113806, ¶ 34). And, liability will not attach even at the expense of uncompensated harm to the plaintiff. *Atkinson*, 369 Ill. App. 3d at 833.

¶ 19    The only requirement for the application of the attorney litigation privilege is that the communication must pertain to proposed or pending litigation. See *Atkinson*, 369 Ill. App. 3d at 832, 834, and *Popp*, 313 Ill. App. 3d at 642 (both citing *Golden v. Mullen*, 295 Ill. App. 3d 865, 870 (1997)). This is known as the "pertinency requirement." However, our courts have made clear that this requirement is not strictly applied. *Atkinson*, 369 Ill. App. 3d at 834; accord *Popp*, 313 Ill. App. 3d at 642; see also *Golden*, 295 Ill. App. 3d at 870. In fact, the privilege will nonetheless protect an attorney even when the communication is not confined to specific issues related to the litigation. *Atkinson*, 369 Ill. App. 3d at 834; accord *Popp*, 313 Ill. App. 3d at 642. As long as it relates to the litigation and is in furtherance of representation, the privilege applies. *Kurczaba*, 318 Ill. App. 3d at 706. Ultimately, should any doubt arise as to whether the pertinency requirement is met, it must be resolved in favor of a finding of pertinency. *Atkinson*, 369 Ill. App. 3d at 832 (citing *Golden*, 295 Ill. App. 3d at 870); accord *Popp*, 313 Ill. App. 3d at 642 (citing *Skopp v. First Federal Savings*, 189 Ill. App. 3d 440, 448 (1989)).

¶ 20    Through the years, as our jurisprudence has developed and as the methods of legal representation have modernized, the attorney litigation privilege has also progressed. In other words, although the privilege began as merely protection for an attorney from defamation

claims by his client regarding communications pursuant to the Restatement (Second), it has been extended widely to other arenas and situations, including who receives the communication and when it is made. For example (and this is by no means meant to be a complete anthology), it has been extended to out-of-court communications between opposing counsel, out-of-court communications between attorney and client related to pending litigation, out-of-court communications between attorneys representing different parties suing the same entities, statements made during quasi-judicial proceedings, communications necessarily preliminary to a quasi-judicial proceeding, out-of-court communications between an attorney and opposing parties in demand letters prior to litigation, and out-of-court communications between an attorney and a prospective client. *Atkinson*, 369 Ill. App. 3d at 832 (and cases cited therein); *Popp*, 313 Ill. App. 3d at 643-44. Moreover, it has been extended to apply not simply when a defamation cause is brought against the attorney, but beyond to many types of causes of action where it could apply under the circumstances and in order to further the privilege's purpose. See *Thompson v. Frank*, 313 Ill. App. 3d 661, 662 (2000), and *Johnson*, 2014 IL App (1st) 122677, ¶ 17 (for example, allegations of intentional infliction of emotional distress, negligent infliction of emotional distress, breach of contract, and invasion of privacy).

¶ 21    This brings us to *O'Callaghan*. Decided recently, and by this very division of our court, *O'Callaghan* provided a comprehensive overview of the attorney litigation privilege, clearly reaffirmed its foundational and operational points, found it applicable to the circumstances presented, and extended its absolute protection in several ways. Although its facts are different, we find *O'Callaghan* to be directly on point to the instant cause and instructive with respect to the privilege's widespread boundaries.

¶ 22    In *O'Callaghan*, the owners of a condominium unit sued the attorney and firm representing the association for intentional infliction of emotional distress and strict liability for ultrahazardous activity. In an underlying complaint (which was eventually dismissed), they alleged that the association failed to properly remedy a ceiling leak, causing toxic black mold to infiltrate their unit. In their separate action against the association's attorney and firm, the owners alleged that these defendants had, in the underlying action, failed to disclose an expert's recommendations for remediating the mold, contrived a defense even though they knew there could be no meritorious defense, concealed information, prolonged litigation in several ways, refused to negotiate terms for inspection, and did not participate in settlement or mediation in good faith. They also alleged that the attorney and firm ordered reports to be falsely amended, directed inspectors to perform actions to spread the mold, and hired unlicensed roofing consultants to make inadequate repairs. Just as in the instant cause, the attorney and firm filed a section 2-615 motion to dismiss the owners' complaint, asserting the litigation privilege. And, just as in the instant cause, the trial court granted their motion.

¶ 23    On appeal, we affirmed, finding that the attorney litigation privilege absolutely protected the attorney and firm from any liability to the owners, thereby barring the owners' claims and meriting dismissal under section 2-615. *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 33 (upon application of privilege, owners had no way to amend their complaint to survive dismissal). After first reviewing the historical and foundational points of the privilege, as well as its public policy and basic tenets, we reaffirmed several points. *O'Callaghan*, 2015 IL App (1st) 142152, ¶¶ 24-25. For example, we reiterated that an attorney's motives are irrelevant and that no liability will attach even at the expense of uncompensated harm to the plaintiff. *O'Callaghan*,

2015 IL App (1st) 142152, ¶ 25. We also reaffirmed the pertinency requirement as the privilege's only linchpin, declaring that while communications must relate to proposed or pending litigation, this rule is not strictly applied and any doubt is resolved in favor of pertinency. *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 25.

¶ 24 With this basis, we next turned to several principles that, with the passage of time, we believed required clarification and expansion. We began by taking on the Restatement's (Second) specific—and, in retrospect, limiting—references to defamation and communications. Historically, the privilege had been applied to attorneys' communications and within the framework of defamation lawsuits brought against them because of these communications. Like the *Atkinson* and *Popp* courts before us, we recognized that as our legal world had progressed, so had the attorney litigation privilege—to different situations, different people, and different causes of action.

¶ 25 Therefore, we first reiterated the timeframe the privilege covers; we reacknowledged that it applies to communications made before, during, and after litigation. *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 26. Next, we noted that other jurisdictions had already extended the privilege to claims other than defamation brought against attorneys. *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 26. This only made sense, as the privilege "would be meaningless if a party could merely recast its cause of action to avoid the privilege's effect." *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 26. And significantly, in direct contradiction to the owners' suggestion, we further found that the privilege extended beyond communications to include conduct performed within the practice of law, since attorneys typically do things—actions—in addition to communications in order to secure justice for their clients. See *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 27. Accordingly, we not only extended the context of the applicable cause of action in which to apply the privilege, but we also extended what is covered. See *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 27 (because supreme court never adopted restatement in its entirety, appellate court could apply privilege outside context of only defamation as contained in restatement if Illinois policy would be furthered in doing so; and, "[l]imiting the privilege to communications, as opposed to conduct, would undermine the policies behind the privilege" since there is " 'no mechanistic formula to define what is and what is not the practice of law' " (quoting *Downtown Disposal Services, Inc. v. City of Chicago*, 2012 IL 112040, ¶ 15)).

¶ 26 In applying all this to the facts of *O'Callaghan*, we found that the attorney and firm were absolutely protected pursuant to the litigation privilege from the allegations in the owners' complaint. This was because all of the allegations—from the alleged improper communications (lying to the association, ordering workers to remove mold-containing barriers and demanding that experts alter their opinions) to the alleged improper conduct (discovery violations, failing to disclose evidence, concealing evidence, contriving a bad-faith defense, and failing to properly participate in settlement and mediation)—clearly pertained to the role of the attorney and firm as attorneys in the underlying action and were done in furtherance of representing their client. *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 29. In other words, all the alleged improper communications and conduct revolved around the subject of the litigation. *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 29. This directly rebutted any suggestion that the attorney and firm were not acting in furtherance of representing their client, which essentially saw them trying to mitigate their client's damages, regardless of their diligence or whether their acts were entirely proper. *O'Callaghan*, 2015 IL App (1st) 142152,

¶ 31. Accordingly, we held that the trial court properly dismissed the owners' complaint as the absolute attorney litigation privilege barred their claims. *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 33.

¶ 27 We find no reason to depart from *O'Callaghan*'s reasoning and, instead, find that it directly applies to the instant cause and renders the same result. McDermott was defending its client, Anne-Marie, against plaintiffs. Plaintiffs now contend that McDermott made the following improper communications and engaged in the following improper conduct: that McDermott ("and/or" Anne-Marie or "their agents") intruded upon their affairs by opening, reviewing, and/or maintaining possession and/or control over their personal mail, bank account information, emails, and medical records; hired investigators and forensic accountants to investigate their financial information; and used all this information to compel them to sign the March 19 documents. However, keeping in mind all the principles regarding the privilege we have discussed, we find that the privilege bars all of these claims. The alleged improprieties clearly pertained to the role of McDermott as the attorney in the litigation Anne-Marie was determining whether to pursue when she discovered millions of dollars missing from the two trusts her deceased mother had set up for her as the beneficiary—trusts managed directly by Frank, Margaret's husband, as sole trustee. McDermott's conduct of obtaining plaintiffs' information (which, by the way, plaintiffs have yet to note how it was even done, let alone whether it was somehow inappropriate, considering Frank kept this information in his desk drawer at work) was entirely done in furtherance of representing Anne-Marie. Indeed, McDermott called the March 19 meeting between Anne-Marie and plaintiffs, presented Anne-Marie's allegations, showed the evidence, and sought to settle the matter—furthering Anne-Marie's interest in limiting litigation and its associated costs, which would presumably be considerable here as we are dealing with the misappropriation of, again, millions of dollars. Pursuant to the privilege, it does not matter what the motives were behind McDermott's conduct or the unreasonableness of its actions in calling and conducting the meeting. And, Anne-Marie's underlying proceeding against plaintiffs in the circuit court of Cook County, wherein she was represented by McDermott, rebuts any suggestion that McDermott was not acting in furtherance of her interest, regardless of whether its acts were entirely proper. To the contrary, the absolute attorney litigation privilege bars plaintiffs' claims here warranting, as the trial court properly found, the dismissal of their complaint.

¶ 28 Having so concluded, there is little to address with respect to plaintiffs' arguments on appeal. As we noted, plaintiffs contend that the trial court's dismissal of their complaints for intrusion upon seclusion against McDermott must be reversed because the court misinterpreted and misapplied the attorney litigation privilege in three ways: by concluding that it covers prelitigation conduct in general, by finding that it applied to McDermott's conduct specifically, and by upholding its determination even though they are left with no recourse. However, in light of our thorough analysis, it quickly becomes evident that none of these holds any merit.

¶ 29 With respect to plaintiffs' assertion regarding prelitigation conduct, we note that it attempts to target two concepts. First, plaintiffs argue that the privilege does not cover anything that occurs in the prelitigation context. They claim that none of the conduct at issue in *O'Callaghan* took place prior to a lawsuit being filed, while all of McDermott's alleged conduct took place prior to a lawsuit being filed and, thus, the privilege cannot apply. Plaintiffs cite the 10 months between the time Frank was locked out of his office at the family business and Anne-Marie's

filing of her lawsuit, during which time the March 19 meeting took place. This argument clearly fails, and the citation to dates and length of time between Anne-Marie's discovery of the misappropriation and the filing of her lawsuit is a red herring. Even assuming that all the conduct at issue in *O'Callaghan* took place after litigation had begun,[6] this does not mean that the attorney litigation privilege does not apply. We have already noted that the facts of *O'Callaghan* are somewhat different than those of the instant cause. But, we have also already stated that this does not change the privilege's applicability. The point is, regardless of the facts presented therein, *O'Callaghan* clearly and specifically reaffirmed that the litigation privilege "applies to communications made before, during [citation], and after litigation [citation]." *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 26. Were this not enough, both *Popp* and *Atkinson* specifically stand for the very proposition that prelitigation communication is wholly covered by this privilege. *Popp* applied it between an attorney and a potential client during preliminary legal consultations—even though the attorney never represented the potential client and no litigation on the potential client's behalf ever took place. *Popp*, 313 Ill. App. 3d at 643 ("[e]ven during an initial consultation, the attorney must be able to openly and honestly discuss the potential client's situation in order to determine the desirability of initiating legal proceedings"). And, *Atkinson* reaffirmed that the privilege has solidly been extended to what may occur before any possible litigation is undertaken, if ever. *Atkinson*, 369 Ill. App. 3d at 832 (*i.e.*, the privilege applies to communications in demand letters between attorneys and opposing parties prior to litigation). Again, the only requirement is that the statements are pertinent to a possible future legal proceeding. *Popp*, 313 Ill. App. 3d at 643. We have already shown that this requirement has been met in the instant cause.

¶ 30        The second portion of plaintiffs' assertion is that the privilege cannot apply here because it covers only communications and not conduct. They state that none of the cases discussing the applicability of the privilege in a prelitigation context support the conclusion that an attorney's conduct is also covered. This is inherently incorrect. Yes, the restatement refers to communications as being covered under the privilege. But, we have already discussed at length the evolution of the privilege, apart and beyond the Restatement (Second), to cover conduct as well. We made this abundantly clear in *O'Callaghan* where we reasoned that, "[b]ecause conduct may be performed in the practice of law, counsel may engage in conduct to secure justice for their clients," and, accordingly, "[l]imiting the privilege to communications, as opposed to conduct, would undermine the policies behind the privilege." *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 27. We further noted therein that, were there to be any worries, the pertinency requirement would still apply, just as it does with communications, to prevent attorneys from shielding unrelated misconduct from liability. *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 27. Again, were this not enough, there is further legal support for the coverage of conduct apart from, and beyond, *O'Callaghan*. In the only cases since that one that have returned to address the litigation privilege, both reaffirmed that the privilege immunizes "statements and conduct" (*Doe v. Williams McCarthy, LLP*, 2017 IL App (2d) 160860, ¶ 19), and that it applies to actions taken by an attorney in connection with potential litigation just as

---

[6]We say "assuming" because, although the majority of the allegations in *O'Callaghan* clearly took place after litigation commenced (*i.e.*, discovery violations, failing to disclose evidence, concealing evidence, contriving a bad-faith defense, etc.), it is not entirely clear that some of them may have indeed occurred prior to litigation (*i.e.*, ordering workers to remove barriers, lying to the association, insufficiently remediating the mold).

it does to communications (*Gorman-Dahm v. BMO Harris Bank, N.A.*, 2018 IL App (2d) 170082, ¶¶ 29, 35).

We further find no merit in plaintiffs' next assertion—namely, that the litigation privilege does not cover McDermott's specific conduct in this cause. Plaintiffs claim that, unlike in *O'Callaghan*, neither of them ever gave anyone permission to give McDermott the information, and McDermott did not obtain it through the ordinary practice of law; therefore, the conduct was outside the scope of the privilege. However, not only do plaintiffs fail to cite any case law for such an assertion, but *O'Callaghan* and the cases upon which it is based make clear that this is unimportant in any regard. Again, an attorney's motives are irrelevant with respect to the applicability of the privilege, as is the reasonableness or unreasonableness of his conduct. See *O'Callaghan*, 2015 IL App (1st) 142152, ¶¶ 25, 30 ("motives and diligence before taking the challenged actions are irrelevant for purposes of the litigation privilege" (citing *Popp*, 313 Ill. App. 3d at 642, and *Atkinson*, 369 Ill. App. 3d at 834)); see also *Johnson*, 2014 IL App (1st) 122667, ¶ 15. McDermott's purpose in presenting the information to plaintiffs was to assist Anne-Marie in bringing the matter of the misappropriation of her mother's trusts, controlled exclusively by Frank, to some sort of settlement in an effort to avoid litigation. McDermott conveyed this to attorney Tunick (representing Frank), Tunick reconveyed this to Frank and Margaret, and plaintiffs chose to attend that meeting and sign the March 19 documents. This all clearly pertained to proposed or potential litigation Anne-Marie was considering to undertake in relation to her missing money, which is the main, and only, benchmark for the application of the privilege. See *Atkinson*, 369 Ill. App. 3d at 832, 834, and *Popp*, 313 Ill. App. 3d at 642 (both citing *Golden*, 295 Ill. App. 3d at 870). And, were this even a question, we would resolve any doubt in favor of a finding that the pertinency requirement was met. *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 25.

Finally, there likewise is no support for plaintiffs' assertion that the litigation privilege should not apply because it leaves them with no recourse. Plaintiffs claim that there is no underlying proceeding, akin to the mold case in *O'Callaghan*, in which they could seek recourse against McDermott, and because McDermott's conduct occurred outside the scope of any judicial proceeding, they have no way to seek redress for their injuries. However, we fail to see how such an assertion can stand. Significantly, *O'Callaghan* and its predecessors all make clear that the privilege applies even at the expense of uncompensated harm to a plaintiff. *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 25; accord *Atkinson*, 369 Ill. App. 3d at 833 (citing *Golden*, 295 Ill. App. 3d at 870, *Weber v. Cueto*, 290 Ill. App. 3d 936, 942 (1991), and *Libco Corp. v. Adams*, 100 Ill. App. 3d 314, 317 (1981)). Additionally, *O'Callaghan* noted that there can be no civil cause of action for misconduct that occurred in prior litigation and, in rejecting the same recourse argument made by plaintiffs here, pointed out that parties should attempt to redress their injuries from such misconduct in judicial proceedings in the same litigation. *O'Callaghan*, 2015 IL App (1st) 142152, ¶¶ 28, 31 ("otherwise, litigation would never end").[7] The trial court in the instant cause noted the same principle, similarly rejecting any concern that neither plaintiff would have recourse if the privilege were applied. Because McDermott's conduct directly related to proposed litigation and was in furtherance of the representation of its client, the privilege applied absolutely, regardless of this concern. At the same time, we note

[7]Significantly, *Popp* applied the privilege even though the attorney there was never involved in any litigation, where there most certainly was no "underlying" litigation. See *Popp*, 313 Ill. App. 3d 638.

here that McDermott is still representing Anne-Marie in the underlying litigation against plaintiffs, a case that was consolidated with the instant ones, and plaintiffs have both specifically retained their intrusion upon seclusion claims against Anne-Marie, counts which are still alive in the circuit court of Cook County. Presumably, it is there where plaintiffs should assert, or should have asserted (by this time), any claim for redress for their injuries related to their intrusion upon seclusion claims. As in *O'Callaghan*, the method plaintiffs have pursued here is inappropriate.

¶ 33    In sum, the attorney litigation privilege applies in the instant cause and absolutely bars plaintiffs' claims for intrusion upon seclusion against McDermott. Accordingly, the trial court properly dismissed plaintiffs' complaint as against McDermott pursuant to section 2-615 of the Code based on that privilege.[8]

¶ 34                                         CONCLUSION
¶ 35    For all the foregoing reasons, we affirm the judgment of the trial court.

¶ 36    Affirmed.

---

[8]Having so found, we need not address any of the alternative grounds for dismissal proposed by McDermott, which include plaintiffs' failure to sufficiently plead a valid intrusion upon seclusion claim, their failure to allege any of its required elements, and forfeiture.